# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

RICKFORD SAMAROO,

    **Plaintiff,**

    **-against-**

    **:**

    Case No.: ____-CV _____ (____) (____)

**NEW YORK CITY HOUSING AUTHORITY,**

**NEW YORK POLICE DEPARTMENT,**

    **Defendant.**

## Plaintiff COMPLAINT -

# TABLE OF CONTENTS

.......................................................................................................Page

PRELIMINARY STATEMENT ...........................................................................4

- Opening Statement..................................................................................4
- Retaliation Section...................................................................................6
- Discriminatory Section..............................................................................7
- Harassment / Warranty of Habitability.........................................................8

JURISDICTION AND VENUE............................................................................9

PARTIES......................................................................................................9

OTHER RELEVANT ENTITIES.......................................................................10

STATUTORY AND REGULATORY SCHEME......................................................12

- The Due Process Clause of the Fourteenth ( 14th)  Amendment...........12
- Public Housing Under the U.S. Housing Act and Amendments............12
- Income Examinations and Rent Determinations................................12
- HUD Requirements for Interim Rent Changes...................................13
- NYCHA Policies on Interim Rent Changes and Housing Court Proceedings........................................................................................14
- Constitutional Violations by Police..................................................15

STATEMENT OF FACTS..............................................................................16

- Communications from Plaintiff with Defendants ( NYCHA and NYPD )...24
- Communications from Defendants (NYCHA and NYPD).......................27
- Oversight (Monitoring Controls) ......................................................31
- Some Rent Payment Timeline.........................................................32

JURY DEMAND...........................................................................................35

CLAIMS FOR RELIEF  & REQUEST FOR RELIEF...............................................35

- Debt Collector and Debts..............................................................35
- Estate.........................................................................................36

- **Community**……………………………………………………………..…..**37**
- **Plaintiffs**…………………………………………………………………..…**38**

**POTENTIAL NEXT STEPS**…………………………………………………**38**

**CITATIONS / REFERENCES**……………………………………………..…**39**

## PRELIMINARY STATEMENT

### Opening Statement

Plaintiff is a pro se litigant in this instant matter, requesting a Jury trial. Belief and understanding Plaintiff has to the best of his ability captured the relevant issues to shine a light on seeking justice for Plaintiff and also those afraid to speak up either by G-d's design or share chance.

Plaintiff is without friends now and servicing other parties poses a challenge with limitations of the Court. Might be early to state and make a request but communicating this challenge to the Court now.

Plaintiff is an Educator. Having moved around in the world of education; seen trash guidelines and curricula, so rewrote and improved them for wide(r) use.

Interestingly, herein are references to written Manuals provided by Government entities. The New York City Housing Authority NYCHA and New York Police Department NYPD are guided by city state and federal written guidance and adapted and supposedly adopted internally.

Dealing with those in positions of Authority is a challenging process. Reading Court cases, seeing and reading news reports about others in similar or worse circumstances is disheartening. Parties agree to stipulations and orders to make corrections to raised grievances, yet story after story shows there have been no real progress.  The mindset is difficult to comprehend.

What is the motivation to take shortcuts, not admit mistakes, not correct those mistakes, but put time and energy to cover up mistakes. Is it laziness, too comfortable in the status quo, stupidity, willful blindness or simply put - pure evil.

In filing this Complaint, several Sources used (see Citations later), edits and revisions based on own financial means. Copy paper and ink are costly. Listed are 2 Defendants (NYCHA and NYPD), the city agencies. Some relevant individuals are listed for this Civil matter for own record-keeping, while aiming for transparency. Actions might rise to the level of Criminal matters.

The jurisdiction is New York. Chelsea is a booming neighborhood and a real estate developers dream spot. Some current residents however are living a nightmare fearing what's to come with changes to Communities and how some are pushing forward with this change.

As move ahead, Plaintiff is respectfully informing the Honorable Court that there admittedly will be 'goof ups' like repetition of points, typos, wrong placement in the Outline and numerous other technical deficiencies that Plaintiff, a pro se litigant with only knowledge of legal matters gleaned from Ironside, Quincy, Woody Woodpecker

("Bunco Busters" season 15 episode 65), Judge Judy, Hot Bench to name a Top 5. Plaintiff will try to cure deficiencies expeditiously as needed.

1.      Defendant NYCHA does not have guidelines to deal with a Tenant passing. This does not protect Tenant and Tenant Families rights. It has led to a cascade of events that can be described as retaliatory, discriminatory, and harassing all in an effort to cover up systemic misconduct and corruption.

2.      Defendant NYCHA does not follow its own written guidelines to deal with a Tenant passing. This does not protect Tenant and Tenant Families rights. It has led to a cascade of events that can be described as retaliatory, discriminatory, and harassing all in an effort to cover up systemic misconduct and corruption.

3.      Defendant NYCHA has not substantially or effectively communicated with the Estate Administrator to follow NYS Surrogate Court guidance (inter alia securing Decedent assets, billing the Estate, not withholding rent overpayments and provide security deposit).

4.      Defendant NYCHA mail and wire communications seeking rent payments from Decedent after December 26 2023 are problematic; denying a Mailbox Key to Plaintiff (on or about October 1 2024 through May 22 2025) while only then starting a Housing Court Holdover case and not a nonpayment case is suspiciously timed.

5.      New York City Council Speaker Corey Johnson said qualified immunity has been "used to deny justice to victims of police abuse" for decades. "It should never have been allowed, but I'm proud that we took action today to end it here in NYC," Johnson tweeted.

6.      In New York City's case - lawmakers have created a law at the local level that pertains solely to the conduct of Police. Plaintiffs could still be blocked by qualified immunity if they sue under federal law. Herein, Defendant NYPD is the agency; the primary law enforcement agency for New York City.

**Retaliation Section**

7.    Defendant NYCHA retaliated against Plaintiff to impede Plaintiff assertion of rights under NYCHA's own Administrative Hearing procedures as provided to Plaintiff via regular United States Postal Service mail (see dated April 4 2024 letter about 'Remaining Family Member') with postmark of April 9, 2024.

8.    Plaintiff was paying Apartment 2G rent after December 26 2023. Rent payments were made on December 31, 2023 and January 31, 2024 and March 3, 2024 and lastly April 4, 2024. 4 payments of $429 + $9.65 fee; a total of: $1754.60 The last rent payment made was April 4, 2024. There would be no current lease as lease was to be over May (2024). Yet NYCHA still sending email rent invoices

9.    Some retaliation dates April 19, 2024 Defendant NYCHA 's Housing Assistant Bitto Cheriyan using Decedent Emergency Contact phone number to ask for keys AND death certificate is a troublesome intentional malicious and reckless request.

10.    Monday May 6 2024 Defendant NYCHA Property Manager Patrick Chan used his key to open Apartment 2G door without using Building intercom downstairs and without appropriate notice.

11.    Tuesday May 7 2024 Defendant NYCHA coordinated an intentional malicious and reckless home invasion and swatting scheme using Defendant NYPD.

12.    During a NYCHA Apartment inspection: Plaintiff reported stove burners not working. NYCHA Maintenance Worker left the home without a working stove. The stove is still not working.

13.    Monday July 29 2024 Plaintiff filed the first Notice of Claim with the NYC Office of the Comptroller via certified mail sent with return receipt. Notice of Claim # 2024P102551 regarding the incidents on Monday May 6 2024 and Tuesday May 7 2024.

14.    On or about August 5 2024 NYCHA left Apartment 2G bathroom with a hole in lower wall that was made in an effort to remedy downstairs neighbor's water leak ticket. A schematic review revealed the leak was not from Plaintiff Apartment. Had NYCHA's vendors done their due diligence, Plaintiff would not have been impacted. Need mold inspection, plaster and paint fixes.

15.    Plaintiff filed a second Notice of Claim with the New York City Office of the Comptroller via certified mail sent on Thursday December 19, 2024 with return receipt. No notice of claim number provided to Plaintiff for this filing regarding incident of Tuesday October 1, 2024 Plaintiff being denied a Mailbox Key by Defendant NYCHA.

16.    On Wednesday March 5 2025 there is a scheduled Housing Court date - a Holdover case. Of course, while Plaintiff has no Mailbox Key to access any USPS postal mail from NYCHA or the Court. The Estate Administrator is in attendance. Judge directive to provide Plaintiff with a Mailbox Key was made.

17.    On Wednesday May 21 2025 Housing Court is a continuation of the Holdover case. Plaintiff is in attendance and informs the Court that Defendant NYCHA did not provide a Mailbox Key, ignoring the directive. The Judge made a new written directive, repeating that NYCHA is to provide a Mailbox Key. Mailbox Key is provided on Thursday May 22, 2025. Plaintiff was without a Mailbox Key from on or around Tuesday October 1 2024 through Thursday May 22, 2025.

**Discriminatory Section**

18.    Source of income, discrimination. The New York State division of human rights announced a settlement of two complaints against Bronx, housing managers, accused of illegally denying apartment applicants with section 8 vouchers. The case was an example of alleged source of income discrimination, which has been prohibited under the New York State human rights law since 2019. The law means that tenants applying

for housing using income from Social Security section 8 vouchers or other lawful assistance cannot be denied on that basis.

19.     Source of income discrimination, impacts our most vulnerable neighbors and is explicitly prohibited across New York State Division of Human Rights.

**Harassment / Warranty of Habitability**

20.     Defendant NYCHA initiated a home invasion and swatting scheme with Defendant NYPD participating. The Defendant NYPD (NYPD PSA 4 Lieutenant Isaac, NYPD PSA 4 Police Officer Fucci Badge Number: 30800, had and used Decedent Emergency Contact phone number that was only provided to NYCHA for emergencies, NYPD PSA 4 Police Officer Llanos Badge Number: 25662, NYPD PSA 4 Sergeant Yang Badge Number: 4070) were armed intruders and physically intimidating to Plaintiff. Worn body cam footage as part of the Discovery is requested. However, according to a July 7 2025 complaint Matthew Pontillo, former Chief of Professional Standards raised alarms about the. repeated misuse of (NYPD) body worn cameras, and unconstitutional (street) stops.

21.     Not one Defendant NYCHA or Defendant NYPD or individual Defendants who should have known or were informed, stepped up to do the right (lawful) thing to de-escalate.

22.     Months later Plaintiff is as broken as the Apartment 2G door chain lock that remains broken. Defendants violated Plaintiff and the right to reside in a livable, safe, and clean apartment as guaranteed under the warranty of habitability.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1337.  Jurisdiction is founded upon 28 U.S.C.

24.     This Court has supplemental jurisdiction over state claims pursuant to 28 U.S.C. §1367. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

25.     Declaratory and injunctive relief are authorized by 28 U.S.C. § 2201(a) and Rules 57 and 65 of the Federal Rules of Civil Procedure.

26.     A cause of action for the federal claims is created by 42 U.S.C. § 1983. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First Amendment and Fourteenth Amendment to the United States Constitution.

27.     Venue is properly assigned, U.S. District Court for the Southern District of New York under 28 U.S.C. §1391(b), in that this is the district in which the claim arose. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b).

## PARTIES

28.     Plaintiff is a United States of America citizen and lifelong resident of New York City, New York. Plaintiff is a pro-se litigant.

29.     Defendant New York City Housing Authority, NYCHA is a body established by the New York State Legislature, as set forth in § 401 of the N.Y. Public Housing Law. NYCHA has entered into an Annual Contributions Contract with the Secretary of Housing and Urban Development to administer a public housing program in New York City. NYCHA maintains its principal place of business at 250 Broadway in New York County.

30.     Defendant New York Police Department NYPD.

## OTHER RELEVANT ENTITIES

31.     CITY OF NEW YORK ("CITY") is a municipal corporation organized under the laws of the State of New York. The CITY maintains and oversees the NYPD, a duly authorized law enforcement agency, as well as the Department of Citywide Administrative Services (DCAS), which includes employment structures related to the Office of Public Safety.

32.     Elliot Fulton LLC is a joint venture between Essence Development and the Related Companies. Elliot Fulton LLC is the Permanent Affordability Commitment Together (PACT) program partner for NYCHA Fulton Houses redevelopment in Manhattan

33.     Lisa Bova-Hiatt, Chair and Chief Executive Officer of the New York City Housing Authority NYCHA

34.      Patrick Chan, New York City Housing Authority NYCHA Fulton Houses, Property Manager

35.    Bitto Cheriyan, New York City Housing Authority NYCHA Fulton Houses, Housing Assistant

36.    Theresa Lantigua, New York City Housing Authority NYCHA, Manager. In Housing Court her name is filed in a Holdover Case No. LT- 322317-24/NY that uses "John Doe" and "Jane Doe" and conceals to the Housing Court that NYCHA denied Plaintiff a Mailbox Key for Apartment 2G starting on or about Tuesday October 1 2024.

37.    Eric Adams was, at all relevant times, the Mayor of the City of New York. Mayor Adams has final policymaking and operational authority with respect to all New York City government agencies to include, in particular, the Defendant NYCHA, Defendant NYPD and CITY.

38.    NYPD PSA 4 Lieutenant Isaac. Ranking personnel of the swatting scheme.

39.    NYPD PSA 4 Police Officer Fucci Badge Number:  30800 had and used Decedent Emergency Contact phone number that was only provided to NYCHA for emergencies.

40.    NYPD PSA 4 Police Officer Llanos Badge Number: 25662

41.    NYPD PSA 4 Sergeant Yang Badge Number: 4070

42.    Edward Caban NYPD Police Commissioner from July 17, 2023 to September 13, 2024. Caban resigned from his post in September 2024.

43.    Brad Lander NYC Comptroller. There seems to be selective intaking of submitting Notice of Claims and investigations.

## STATUTORY AND REGULATORY SCHEME

### The Due Process Clause of the Fourteenth (14th) Amendment

44.    The Fourteenth Amendment to the United States Constitution guarantees that all persons shall be provided due process of law under the laws of the States. U.S. Const., Amend.XIV, Sec. 1. The Due Process Clause prohibits state action that deprives a person of their liberty or property without due process of law.

45.    Public benefits have long been afforded constitutional protection as a type of property protected by the Due Process Clause of the U.S. Constitution. In this context, due process requires, at a minimum, adequate notice and an opportunity to be heard. Due process is necessary to ensure that the public benefits to which one is entitled are accurately and fairly administered in a timely fashion, and to protect beneficiaries from erroneous deprivation.

### Public Housing Under the U.S. Housing Act and Amendments

46.    With the United States Housing Act of 1937, Congress established a federally funded public housing program with the goal of providing decent homes and suitable living environments for families that lack the financial means to afford a home on their own. The central goal of the Act is "to remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income families."

47.    Public housing agencies ("PHAs") own and manage conventional public housing. By issuing regulations and policy guidance, the Department of Housing and Urban Development (HUD) is responsible for ensuring that local PHAs properly operate the public housing program as a whole.

### Income Examinations and Rent Determinations

48.    Families are eligible for public housing only if their income is below a certain threshold at the time of initial occupancy.

49.    In 1969, Congress amended the Act to set maximum rents a public housing agencies can charge as a percentage of household income. Under the amended formula, public housing tenants can choose to pay the flat rent or rent based on income, which is generally capped at 30% of the household's adjusted income, with allowances for certain deductions.

50.    For families who pay an income-based rent, HUD requires the public housing agencies to reexamine the household rent "at least annually" plus on an interim basis as necessary. In order to determine eligibility and adjust rents, families are required to provide information related to income, household composition, and immigration status to the public housing agency.

51.    Then, the Public Housing Agency "must make appropriate adjustments in the rent after consultation with the family and upon verification of the information." Plus, Public Housing Agencies must notify tenants of the rent readjustment in writing, as well as inform them of their right to challenge the determination pursuant to the grievance procedures.

52.    Federal statutes and regulations provide detailed rules concerning the calculation of the family's annual income and the adjusted income.

53.    Once the adjusted income has been determined, the public housing agency sets the total tenant payment (TTP)

**HUD Requirements for Interim Rent Changes**

54.    Household changes do not occur on an annual cycle. Births and deaths, marriages and divorces, household departures, changes in income, medical or family emergencies—these and other fundamental aspects of ordinary life affect household composition and income and must be taken into account.

55.    To ensure that public housing tenants pay no more than 30 percent of their actual, current income, HUD provides that a public housing family has the right to request an interim reexamination of the family income or composition "because of any changes since the last determination."

56.    Public Housing Agency must process a request for an interim reexamination if a tenant reports an income reduction due to employment layoffs, cutback in hours, a change in family composition increases in child care costs, increases in unreimbursed medical costs, and other circumstances that decrease the household's income or increase eligible deductions. (See HUD Guidebook § 13.1.)

57.    Federal regulations require public housing agencies to promptly process interim reexaminations.

58.    Public Housing Agencies must give tenants written notification of the adjustment in rent as well as the effective date. (See HUD Guidebook § 13.1 and 13.3.)

59.    Under HUD guidelines, Public Housing Agencies must reduce a tenant's rent in response to an income drop, except for: (a) a reduction in welfare payments due to welfare fraud; or (b) a failure to comply with economic self-sufficiency requirements. HUD Guidebook § 13.1 and 13.5.

**NYCHA Policies on Interim Rent Changes and Housing Court Proceedings**

60.    Under HUD guidelines, Public Housing Agencies establish their own written policy on when and under what conditions the family must report a change in family income or composition. NYCHA policy distinguishes between interim recertifications resulting in rent reductions and those resulting in rent increases. (see NYCHA Management Manual, Ch. III § XIV (2016).)

61.    For interim rent reductions, NYCHA policy provides that the effective date of the change is the first of the month following the date on which the decrease occurred if the tenant provides notice to management within thirty days.

62.    If the tenant provides notice more than thirty days after the change, the effective date is the first of the month following the date of notification of the change, "unless the tenant satisfactorily demonstrates that the failure to report the change was beyond his/her control."

63.    In addition, per NYCHA's "Housing Court Proceedings Manual for Management," local management offices are called to initiate nonpayment lawsuits against tenants who fall two months in alleged arrears. NYCHA, "Housing Court Proceedings Manual for Management," October 2019, p. 2. The only two exceptions to this automatic-lawsuit rule are if (I)there is a pending housing court case, or (ii) there is a pending bankruptcy proceeding. Notably, the rule does not require that management offices at the local level examine, prior to initiating suit, whether the alleged arrears may be due to a miscalculation of the tenant's rent share.

**Constitutional Violations by Police**

64.    The Fourth Amendment to the U.S. Constitution protects individuals from unreasonable searches and seizures by the government. It requires that warrants be issued based on probable cause and specifically describe the place to be searched and the persons or things to be seized. Essentially, it safeguards the privacy and security of individuals against unwarranted government intrusion.

65.    Racial Profiling is Targeting individuals for suspicion or investigation based on their race is a violation of the Equal Protection Clause of the Fourteenth Amendment.

66.    Coerced Interrogation; Police cannot use coercive tactics to force someone to make a statement or confess.

67.    Denial of Access to Counsel;
Individuals have the right to legal counsel during all stages of a criminal proceeding

## STATEMENT OF FACTS

68.    Defendant NYCHA has failed to institute and promote and make widely known effective procedures or train and supervise its staff, and have not instituted an adequate system for tracking the submission of documents and correspondence or otherwise tracking their performance as it relates to the timely and accurate processing of interim and annual rent recertifications.

69.    Defendant NYCHA policies and practices violate the Brooke Amendment and its implementing regulations, the Due Process clause of the U.S. Constitution and NYCHA's own written policies.

70.    Defendant NYCHA weaponizes the judicial process to intimidate underserved communities (inter alia senior citizens, people of color, or the poor). An examination of the correctness of the rent then becomes a part of the lawsuit itself. This is a "file suit first, figure out whether the rent is correct later" way of doing business. However, there are exceptions see LT 322317 - 24 / NY where rent has not been paid for months and there is yet to be a Nonpayment of rent Housing Court case started by NYCHA.

71.    An examination of the correctness of the tenant's rent share prior to initiating suit could avoid the filing of numerous and costly improper eviction proceedings.

72.    Elliot Fulton LLC is a joint venture between essence development and the related companies; Elliot Fulton LLC is the PACT Permanent Affordability Commitment

Together (PACT) program partner for NYCHA Fulton Houses redevelopment in Manhattan.

73.     On February 6, 2024, the US Attorney's Office for the Southern District of New York (SDNY) announced the indictment of 70 current and former NYCHA employees on bribery and extortion charges related to a scheme involving micro-purchases.

74.     Defendant, New York City Housing Authority (NYCHA), does not have or follow protocols upon the passing of a tenant to ensure rights of relevant parties are protected. Wire fraud (18 U.S.C. § 1343): The use of interstate email and telecommunications by Defendant NYCHA. The sending of rent invoices to Decedent is problematic.

75.     Defendants (NYCHA and NYPD) committed intentional malicious reckless actions that violated Plaintiff rights, Defendants acted in a retaliatory, discriminatory and harassing manner.

76.      On Monday, May 6, 2024, Defendant NYCHA personnel (later identified as Property Manager Patrick Chan) came to Apartment 2G bypassing downstairs intercom system. Defendant NYCHA's Patrick Chan opened Apartment 2G door with his key. Defendant NYCHA's Property Manager Patrick Chan was precluded from gaining full entry because the working installed apartment door chain lock was in use by Plaintiff.

77.     On Monday, May 6, 2024, Defendant NYCHA personnel did not display identification through the ajar door. This person was later determined to be Defendant NYCHA's Property Manager Patrick Chan by displaying employee photo identification card on Tuesday May 7 2024.

78.     On Monday May 6 2024 Plaintiff identified himself from inside Apartment 2G.

79.    On Monday May 6 2024 Defendant NYCHA's Property Manager Patrick Chan, after being caught breaking into Apartment 2G, made statements to Plaintiff through the ajar door about having observed numerous persons going in and out of Apartment 2G.

80.    On Monday May 6 2024 Defendant NYCHA's Property Manager Patrick Chan standing outside of Apartment 2G door, said through the door he would be back with police. No written notifications were provided to Plaintiff.

81.    Defendant NYCHA disseminated Decedent personal information (including but perhaps not limited to Emergency Contact phone number) to Defendant NYPD violating privacy

82.    On Tuesday, May 7, 2024, around 1:30pm, in what can be described as a home invasion and swatting scheme, Defendant New York Police Department's (NYPD's) PSA 4 Lieutenant Isaac gained entry to Apartment 2G and allowed other armed Defendant NYPD personnel and Defendant NYCHA personnel to enter and trespass.

83.    In New York, "swatting" can be prosecuted under several criminal statutes, including false reporting of an incident, aggravated harassment, and making terroristic threats. Depending on the specific circumstances and the intent behind the action, it can be classified as a misdemeanor or a felony. Felony has harsher penalties.

84.    On Tuesday, May 7 2024 Elliott-Fulton LLC, Permanent Affordability Commitment Together (PACT) personnel were not identified as being in Apartment 2G.

85.    On Tuesday, May 7 2024 Elliott-Fulton LLC, Essence Development and Related Companies partners with the Fulton and Elliott-Chelsea community, NYCHA leadership, and local stakeholders were not identified as being in Apartment 2G.

86.    On Tuesday, May 7 2024 Defendant NYPD provided No articulated specific crime for entering Plaintiff Apartment 2G.

87.    On Tuesday, May 7 2024 Defendant NYPD provided no reasonable suspicion for entering Plaintiff Apartment 2G.

88.    On Tuesday, May 7 2024 Defendant NYPD provided no probable cause for entering Plaintiff Apartment 2G.

89.    On Tuesday, May 7 2024 Defendant NYPD provided no warrants for entering Plaintiff Apartment 2G.

90.    On Tuesday, May 7 2024 Defendant NYPD did not read Miranda rights upon forcibly entering Plaintiff Apartment 2G.

91.    Estate and Plaintiff's rights were violated by Defendant NYPD and Defendant NYCHA personnel.

92.    On Tuesday, May 7 2024 Plaintiff provided identification to Defendant NYPD and Defendant NYCHA.

93.    On Tuesday, May 7 2024 Defendants 4 NYPD and 2 NYCHA employees provided identification information to Plaintiff.

94.    On Tuesday, May 7 2024 Defendant NYCHA 's Property Manager Patrick Chan told Defendant NYCHA's Housing Assistant Bitto Cheriyan to prepare Court papers. This was a use of cat's paw theory.

95.    On Tuesday, May 7 2024 Defendant NYPD and Defendant NYCHA personnel left Plaintiff alone in Apartment 2G with the now broken Apartment door chain lock as of Tuesday May 7 2024 and ongoing as to the date of writing this complaint document.

96.    A door chain, security chain, or security door chain or chain door interviewer [ Stroik, John S. (1977). Terms and Definitions for Door and Window Security. Vol. 13. U.S. Department of Commerce, National Bureau of Standards. p. 3.] consists of a small chain attached to the door frame, which attaches to a track on the door for security purposes. It is a type of lock that is often used along with other types of locks to secure a door [ Frane, James T (1994). Craftsman's Illustrated Dictionary of Construction Terms. Craftsman Book Company. p. 102]

97.    When Police entered Plaintiff home without Plaintiff permission or a warrant or circumstances that required them to act, their entry is presumed to be unreasonable under both Federal and State law.

98.    Qualified immunity is a decades-old legal doctrine that's often-shielded police officers in cases of excessive force or unreasonable search and seizure. The newly-passed legislation allows victims of alleged police misconduct in New York City to bypass qualified immunity standards needed to bring a case. The rule now requires a victim to show their "clearly established" constitutional or statutory rights were violated. This means finding an existing court decision that ruled the specific action in question is unconstitutional, which opponents say can be difficult, if not impossible in some cases.

99.    Plaintiff filed NYC Office of the Comptroller Notice of Claim sending United States Postal Service (USPS) certified mail on Monday July 29 2024 with return receipt. Notice of Claim # 2024P102551.

100.    Plaintiff filed a second NYC Office of the Comptroller Notice of Claim sending USPS certified mail on Thursday December 19 2024 with return receipt. No intake Case Number provided by NYC Office of the Comptroller.

101.    On Tuesday October 1, 2024 noon, some 5 months after prior break-in of May 6 2024, Plaintiff (Current Tenant, Successor, Remaining Family Member, Beneficiary of Decedent for 419 West 17 Street, Apt 2G, NY, NY 10011) went to Defendant NYCHA 's Property Management Office (421 West 17 Street NY NY 10011) and was DENIED a NEW Mailbox Key.

102.    On Tuesday October 1, 2024 noon in Defendant NYCHA's Property Management Office, a Defendant NYCHA's unnamed Office Secretary looked at a clipboard list and was read out loud, "DO NOT GIVE KEY"; She said the Property Manager was out to lunch and will be back after 1pm. Plaintiff waited uncomfortably for nearly one hour in waiting area.

103.    On Tuesday October 1, 2024 at 1:05pm, Defendant NYCHA's Housing Assistant Bitto Cheriyan presented himself to explain Defendant NYCHA's DENIAL of a Mailbox Key to Plaintiff. Cheriyan talked about a letter to be sent, to him or NYCHA, to be taken to Court, to prove Plaintiff identity. Plaintiff asked to see in writing.

104.    On Tuesday October 1, 2024 in Defendant NYCHA's Property Management Office, Defendant NYCHA's personnel left Plaintiff alone without a NEW Mailbox Key for Apartment 2G.

105.    On Tuesday October 1, 2024 in this matter regarding Mailbox Key there was NO timely ADVANCED mail or wire communication, registered or certified mail or otherwise (affixed to door, slipped under door, robocall, etc.) regarding all building mailboxes being replaced in a matter of days.

106.    Plaintiff was locked out of receiving timely USPS mail from on or around Tuesday October 1 2024 to Thursday May 22 2025 due to Defendant (NYCHA) actions.

107.    On Wednesday March 5 2025 at an initial NYC Housing Court Holdover Hearing in Room 844, Case No. LT- 322317-24/NY a Judge directive was made to give Plaintiff a Mailbox Key; Estate Administrator was in attendance; NYCHA ignored this Court directive.

108.    On Wednesday May 21 2025 at a second NYC Housing Court Holdover Hearing in Room 844 Case No. LT- 322317-24/NY a repeated Judge directive was made and a Mailbox Key was given to Plaintiff on Thursday May 22 2025 by Defendant NYCHA.

**Additional Timeline Information Regarding Defendant (NYCHA)**

**Defendant NYCHA Awareness / Knowledge of Plaintiff Identity**

109.    Plaintiff is identified in the Defendant NYCHA Books and Records as an Original Household member: 430 West 17 street 1-F NY NY 10011 leases

110.    Plaintiff should be identified in the Defendant NYCHA Books and Records: notice of intent to vacate 040.032, departing member of household supporting documentation of new address

111.    Plaintiff is identified in the Defendant NYCHA Books and Records: rent payments.

112.    Plaintiff is identified in the Defendant NYCHA Books and Records: signing for NYCHA Maintenance Worker appearances at Apartment 2G.

113.    Plaintiff is identified in the Defendant NYCHA Books and Records: Warranty of Habitability repairs and inspections for Apartment 2G.

114.    Plaintiff is identified in the Defendant NYCHA Books and Records on or about Friday September 23 2022: Defendant NYCHA's Maintenance Worker gave Plaintiff 2 Apartment 2G door keys and 2 Mailbox Keys.

115.    Defendant NYCHA procedural rule: One key is provided per tenant. The exact wording should be readily discoverable in Defendant NYCHA Books and Records.

116.    Plaintiff is identified in the Defendant NYCHA Books and Records: Monday October 30 2023: Dr. Andy Price M11Q document

117.    Plaintiff is identified in the Defendant NYCHA Books and Records:  After Tuesday December 26, 2023 and until Thursday June 13 2024: NYCHA still emailing Rent invoices (with payment processor Wells Fargo) and accepted Plaintiff rent payments.

118.    Plaintiff is identified in the Defendant NYCHA Books and Records: On Monday May 6 2024 Plaintiff identified himself from inside Apartment 2G to Defendant NYCHA outside of Apartment 2G. No one showed photo identification.

119.    Plaintiff is identified in the Defendant NYPD Books and Records: On Tuesday May 7, 2024 Plaintiff displayed photo identification upon request after Defendants NYPD and NYCHA entered Apartment 2G unlawfully. NYPD records (including but not limited to all personnel body cams on the call out to scene and all documents) are requested.

120.    Plaintiff is identified in the Defendant NYCHA Books and Records: On or about Wednesday, August 21 2024 Defendant NYCHA's Property Manager Patrick Chan at Apartment 2g door with no written advance notification for repairs supposedly impacting a downstairs neighbor. Defendant NYCHA's Property Manager Patrick Chan expresses condolences and says he will provide Remaining Family Member Court papers Defendant NYCHA does not provide these papers.

121.    Plaintiff is identified in the Defendant NYCHA Books and Records: NYCHA's (Property) Manager Theresa Lantigua files in Housing Court a Holdover Case No. LT-322317-24/NY using "John Doe" and "Jane Doe" and conceals to the Court that Plaintiff was denied a Mailbox Key for Apartment 2G.

## Communications from Plaintiff with Defendants (NYCHA and NYPD)

122.    Plaintiff in-person communications with Defendant NYCHA at Property Management Office (421 w 17 street NY NY 10011): 430 w 17 street 1F NY NY 10011 rental leases

123.    Plaintiff in-person communications with Defendant NYCHA at Property Management Office: 419 W 17 St 2G NY NY 10011 rental leases

124.    Plaintiff in-person communications with Defendant NYCHA at Property Management Office: Annual and Interim Certifications

125.    Plaintiff in-person communications with Defendant NYCHA at Property Management Office: response to (free) Air Conditioner removal letter in a hot summer

126.    Friday September 23 2022 Decedent discharged from Village Care Rehabilitation and Nursing Center. Decedent needed Defendant NYCHA assistance in NYCHA

Property Management Office to get access to Apartment 2G; (Decedent did not have photo identification or keys with).

127.   Plaintiff in-person communications with Defendant NYCHA at Property Management Office on Tuesday October 1 2024. Plaintiff, following information seen in a posted flyer in resident building lobby on Thursday September 26 2024 how to get replacement Mailbox Key was denied a Mailbox Key, tenant handbook, and access to rental folder.

128.   Plaintiff in-person communications with Defendant NYCHA in Apartment 2G: after breaking door lock for Decedent returning home from Village Care Rehabilitation and Nursing Center on Friday September 23, 2022 and subsequently fixing with new Apartment door lock, NYCHA Maintenance Worker provided 2 new Apartment 2G door keys. Additionally provided Plaintiff with 2 new Mailbox Keys after Maintenance Worker related a story that Plaintiff lost Mailbox Key a week prior. That was a false story but Plaintiff requested a new Mailbox Key and same Maintenance Worker responded by going downstairs and shortly returning to give Plaintiff 2 new Mailbox Keys.

129.   An audit trail should exist in Defendant NYCHA Books and Records for any and all keys made and provided to anyone for Apartment 2G.

130.   Plaintiff in-person communications with Defendant NYCHA around Apartment 2G: On Monday May 6 2024 from inside Apartment 2G, Plaintiff identified who he was and purpose to Defendant NYCHA's Property Manager Patrick Chan. Chan was caught breaking into Plaintiff Apartment 2G; Chan said he was here because there were multiple individuals observed to be going in and out of Apartment 2G.

131.   A review of Defendant NYCHA installed security camera footage can help identify details of Defendant NYCHA's Property Manager Patrick Chan claim that there were multiple individuals going in and out of Apartment 2G prior to Monday, May 6, 2024.

132.    Defendant NYCHA Books and Records has information describing the response taken by Defendant NYCHA based on NYCHA Property Manager Patrick Chan claim there were multiple individuals going in and out of Apartment 2G prior to Monday, May 6, 2024, and after Tuesday December 26 2023.

133.    Plaintiff in-person communications with Defendant NYCHA and Defendant NYPD in Apartment 2G: On Tuesday May 7 2024 Plaintiff identification card displayed to Defendant NYPD after NYPD and NYCHA broke into and entered Apartment 2G without Plaintiff consent, without Plaintiff permission, without search warrant, without exigent circumstances, or properly provided notification.

134.    Plaintiff in-person communications with Defendant NYCHA in Apartment 2G: NYCHA Defendant Books and Records can show NYCHA Maintenance Worker visits

135.    Plaintiff phone communications with Defendant NYCHA: NYCHA Defendant Books and Records can show Plaintiff requests for Apartment 2G needed repairs

136.    Plaintiff mail communications with Defendant NYCHA: Defendant NYCHA Books and Records can show Plaintiff Annual and interim certifications.

137.    Plaintiff mail communications with Defendant NYCHA: Defendant NYCHA Books and Records can show Plaintiff application for Housing Choice Voucher Program administered by the New York City Housing Authority, and rejection response letter from Defendant NYCHA dated August 1 2024

138.    Plaintiff email communications with Defendant NYCHA: Plaintiff replied to Defendant NYCHA emails by making monthly rent payments even after December 26, 2023. Plaintiff made rent payments to Defendant NYCHA (payment processor Wells

Fargo) on December 31 2023 and January 31, 2024 and March 3, 2024 and lastly April 4, 2024. 4 payments of $429 + $9.65 fee; a total of: $1754.60

139.    Plaintiff email communications with Defendant NYCHA: Plaintiff replied to Defendant NYCHA email dated: December 13, 2023. This NYCHA Rent invoice due January 1 2024 was paid by Plaintiff on: Sunday December 31, 2023

140.    Plaintiff email communications with Defendant NYCHA: Plaintiff replied to Defendant NYCHA email dated: January 13, 2024. This NYCHA Rent invoice due February 1, 2024 was paid by Plaintiff on: Wednesday, January 31, 2024.

141.    Plaintiff email communications with Defendant NYCHA: Plaintiff replied to Defendant NYCHA email dated: February 13, 2024. This NYCHA Rent invoice due March 1, 2024 was paid by Plaintiff on: Sunday March 3, 2024.

142.    Plaintiff email communications with Defendant NYCHA: Plaintiff replied to Defendant NYCHA email dated: March 13, 2024. This NYCHA Rent invoice due April 1, 2024 was paid by Plaintiff on: Thursday, April 4, 2024.

143.    Estate Administrator communicated with Defendant NYCHA via USPS certified mail (on May 7 2024 May 13, 2024 June 17, 2024 June 28, 2024 August 5, 2024 October 1, 2024 December 1, 2024). Defendant NYCHA Books and Records should have these communications and NO responses.

144.    Estate Administrator communications regarding Defendant NYCHA: January 2025 inquiry made to New York Attorney General Leticia James about Defendant NYCHA returning Security Deposit adjustment. Defendant NYCHA Books and Records should have these communications and responses.

**Communications from Defendants (NYCHA and NYPD)**

145.    Defendant NYCHA in person: On Monday, May 6, 2024 at Apartment 2G NYCHA Property Manager Patrick Chan used his key to open Apartment 2G door without using the building's intercom system, and without prior notice.

146.    Defendants NYPD and NYCHA on Tuesday, May 7, 2024 entered Apartment 2G after breaking apartment door chain lock in a home invasion and swatting scheme. Both Defendants personnel entered without warrant or emergency circumstances. Defendant NYCHA's Housing Assistant Bitto Cheriyan admitted to frivolous nuisance rationale for breaking into Plaintiff Apartment to court clerk on Wednesday May 21 2025 in Housing Court Holdover Case (LT 322317-24/NY).

147.    Defendants NYPD on Tuesday, May 7, 2024 in Apartment 2G did not articulate the crime; did not make any arrest for trespass; did not make any arrest for this disorderly conduct; did not make any arrest for breaking and entering.

148.    Defendant NYPD on Tuesday, May 7, 2024 in Apartment 2G witnessed criminal activity and violations of laws committed by Defendant NYCHA.

149.    Defendant NYCHA's Property Manager Patrick Chan on Tuesday May 7 2024, in Apartment 2G instructed NYCHA Housing Assistant Bitto Cheriyan to initiate Court papers.

150.    Defendants NYPD and NYCHA left Plaintiff alone in Apartment 2G after the home invasion and swatting scheme on Tuesday, May 7, 2024.

151.    On Wednesday August 21 2024: Defendant NYCHA's Property Manager Patrick Chan with 2 unknown individuals standing outside of Apartment 2G door in hallway discussing with Plaintiff about downstairs apartment having a water leak. At this moment NYCHA Patrick Chan offered condolences to Plaintiff.

152.   On Wednesday August 21 2024: Defendant NYCHA did not forcibly enter Apartment 2G. Defendant NYCHA did not contact law enforcement or anyone else (Elliot Fulton LLC, NYPD, FBI).

153.   Police enter plaintiff home without plaintiff permission or a warrant or circumstances that required them to act, their entry is presumed to be unreasonable under both federal and state law.

154.   At Defendant NYCHA's Property Management Office 421 W 17 Street NY NY 10011: On Thursday June 5 2025 Plaintiff met with Defendant NYCHA's Property Manager Patrick Chan and Housing Assistant Bitto Cheriyan for a Remaining Family Member ( RFM ) Hearing as directed by Housing Court Holdover Case Room 844 on Wednesday May 21 2025.

155.   At Defendant NYCHA's Property Management Office: On Thursday June 5 2025 Remaining Family Member ( RFM ) Hearing, Defendant NYCHA's Property Manager Patrick Chan quickly showed Plaintiff 2 documents.

156.   At Defendant NYCHA Property Management Office: On Thursday June 5 2025 Remaining Family Member (RFM) Hearing, Defendant NYCHA's Property Manager Patrick Chan showed a Thursday April 4 2024 dated document - not the postmarked envelope of Tuesday April 9 2024. The document mentions occupant should act in 30 days of receiving document - that would have been Thursday May 9 2024.

157.   At Defendant NYCHA Property Management Office: On Thursday June 5 2025 Remaining Family Member (RFM) Hearing, Defendant NYCHA's Property Manager Patrick Chan showed to Plaintiff a document stating Plaintiff resides at an address gathered from Decedent death certificate. Will need to discover this document.

158.    At Defendant NYCHA Property Management Office: On Thursday June 5 2025 Remaining Family Member (RFM) Hearing, Defendant NYCHA's Property Manager Patrick Chan indicated he did not know about Plaintiff Notice of Claim (Notice of Claim # 2024P102551) filed with the NYC Office of the Comptroller on July 29 2024 (that explicitly mentions Patrick Chan actions).

159.    Defendant NYCHA phoned on Friday April 19 2024. NYCHA Bitto (no last name mentioned) called Emergency Contact to ask for apartment keys and interestingly the death certificate of Decedent. There was no mention of multiple persons in out of Apartment 2G and no mention of contact made with law enforcement agencies inter alia PACT NYPD FBI, nor was an explanation made as to why Apartment 2G was not sealed to prevent unknown persons going in and out of Apartment 2G; On Monday May 6 2024 Defendant NYCHA's Property Manager Patrick Chan said he was investigating the numerous people in and out of apartment 2G.

160.    Defendant NYCHA gave Decedent emergency contact information to Defendant NYPD as on Tuesday May 7 2024 incident, NYPD used a cell phone to call it.

161.    Defendant NYCHA prevented Plaintiff from mailbox access on or about Tuesday October 1 2024 to Thursday May 22 2025 as NYCHA withheld Mailbox Key from Plaintiff and Estate Administrator.

162.    Defendant NYCHA ignored Estate Administrator certified mails asking for a Mailbox Key.

163.    Defendant NYCHA partners, Elliot-Fulton LLC Permanent Affordability Commitment Together (PACT) PACT and Bridge plan provide information detailing some tenant protections. Defendant NYCHA Books and Records should have information about events involving Apartment 2G and the lack of tenant protections.

164.    Defendant NYCHA emailed monthly Rent statements to Decedent, from E-Billexpress@e-billexpress.com: On December 13 2023, statement date December 12, 2023, due date: January 1 2024. Defendant NYCHA continues with sending emails: January 13, 2024 February 13, 2024 March 13, 2024 April 14, 2024 May 13, 2024 June 13, 2024.

**Oversight (Monitoring Controls)**

165.    Safeguards provided by Court order in lawyer represented class action suit for NYCHA tenants watchdog case were not applied. erroneous rent statements continue to be sent to tenants.

166.    After December 26 2023 Defendant NYCHA (with payment processor (Wells Fargo) sent out rent invoices. From January 2024 to May 2024 Defendant NYCHA accepted rent payments.

167.    Defendant NYCHA sent mail addressed to Decedent name and address Apartment 2G, letters dated March 2, 2025 March 7, 2025 April 2, 2025. these envelopes were only found in the mailbox after Thursday May 22, 2025 since the Mailbox Key was now in hands of the Plaintiff because of Wednesday, May 21 2025 Housing Court judge directive.

168.    Defendant NYCHA stopped sending email rent invoices and no mail invoices to collect rent for June 2024 through June 2025 yet Defendant NYCHA suggests there is an outstanding amount due of: $6364.54 (see Thursday June 5 2025 RFM Hearing document in Defendant NYCHA Books and Records)

169.    Defendant NYCHA can provide keys audit reports related to Apartment 2G. Any billing irregularities need to be remedied. When was decision made by Defendant NYCHA to replace all building mailboxes (see posted building lobby flyer September 2024)? Tenants were not provided timely notification regarding replacing their mailbox and the need for Mailbox Keys.

170.    Defendant NYCHA did not contact Elliot-Fulton LLC PACT and on-site security or NYPD to act upon 'multiple persons in and out of Apartment 2G after December 26 2023. as NYCHA's Property Manager Patrick Chan said on Monday May 6 2024 to Plaintiff.

171.    NYCHA and NYPD role and responsibilities: Defendants actions were not compliance with law and agency manuals detailing rules and regulations; there is no or limited qualified immunity in New York; Governor Hockel NYS Tenant Rights; Estate rights. Records of dispatch and incident reports regarding Apartment.

172.    Recent NYPD psych exams Court case. Defendants were not adequately trained and qualified for positions

**Some Rent Payment Timeline**

173.    December 26 2023 is a noteworthy and material date in this instant matter.

174.    Apartment 2G Rental Lease ended December 26 2023.

175.    Plaintiff last paid rent April 4 2024.

176.    Apartment 2G Rental Lease ended May 2024.

177.    Defendant NYCHA denied Plaintiff a new lease for adjusted occupancy.

178.    Defendant NYCHA is withholding rental overpayments to Plaintiff and Estate.


179.    Defendant NYCHA is withholding adjusted security deposit from Estate.


180.    Defendant NYCHA did not conduct 2024 annual certification as per Federal guidelines to obtain inter alia Plaintiff income


181.    Defendant NYCHA did not conduct 2025 annual certification as per Federal guidelines to obtain inter alia Plaintiff income


182.    Plaintiff has stopped paying rent starting May 2024 to current date.


183.    Defendant NYCHA stopped sending new email rent invoices since June 2024.


184.    Defendant NYCHA Maintenance Worker was not able to make a Plaintiff requested repair of the broken chain lock as per Warranty of Habitability protections. NYCHA Maintenance Worker stated 'we don't have those door locks anymore'.


185.    Defendant NYCHA impeded Plaintiff access to United States Postal Service (USPS) mail by withholding Mailbox Key on or about October 1 2024 through May 22 2025. Plaintiff was denied timely access to USPS mail (that includes any rent statement, bills, court appearance etc.) by Defendant NYCHA.

186.    On Wednesday March 5 2025 Housing Court for Holdover Room 844 (Case No. LT- 322317 - 24/NY), is not for unpaid rent. NYCHA's Housing Assistant Bitto Cheriyan and lawyer there; not Property Manager Patrick Chan or a NYCHA Manager Theresa Lantigua. Theresa Lantigua is named on the Housing Court documents. NYCHA uses a" john doe" and "jane doe", not Plaintiff name so Plaintiff impeded from submitting a notarized written Answer. There is an issue about what Plaintiff address is being used. Estate Administrator appears to exercise rights. Plaintiff is precluded from accessing any postal mail from Court notifications as any are sitting in mailbox and Plaintiff was denied Mailbox Key by Defendant NYCHA.  Judge directive was for Mailbox Key to be given to Plaintiff here, but NYCHA ignored the Wednesday March 5 2025 directive as discussed in the new Housing Court date of Wednesday May 21 2025.

187.    On Wednesday May 21 2025 Plaintiff appears in Housing Court, but cannot provide written answer as name is neither "john doe" or "jane doe"

188.    At Wednesday, May 21, 2025 Housing Court for a Holdover Case the NYCHA Lawyer Cannavo in a brief outside meeting away from Judge, claims he wasn't the lawyer at the prior court date (Wednesday March 5, 2025) to explain why Judge directive to provide Mailbox Key was ignored. Outcomes: NYCHA directed to give Mailbox Key on Thursday May 22 2025, go through administrative hearing process - a Remaining Family Member (RFM) Hearing on Thursday June 5 2025. instructed about next steps: wait for impartial hearing information, then New York State Supreme Court article 78 procedure and then to return to Housing Court Room 844 on Wednesday September 24, 2025 with any update.

189.    RFM Hearing on Thursday June 5 2025 was held by some of same individuals in this complaint (NYCHA Chan and Cheriyan). NYCHA Chan shows an old rental lease with Plaintiff name, and an April 4 2024 document. Plaintiff sees a document with a total of: $6364.54 owed rent (accumulating from May 2024 to June 2025), but Plaintiff is not being taken to Housing Court for nonpayment of rent. Plaintiff attempted to show as part of Plaintiff proofs - addressed mail bill from Village Care Rehabilitation Nursing Center dated November 1 2022, HRA Income, NYC Office of the Comptroller Notice of Claim # 1 intake letter dated August 2024. NYCHA Chan said he did not need copy and doesn't know about NYC Office of the Comptroller Notice Claim (despite Chan's name and actions were explicitly described). NYC Office of the Comptroller can provide records. Warranty of Habitability issues were discussed.

## JURY DEMAND

190.    Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b)

## CLAIMS FOR RELIEF & REQUEST FOR RELIEF

### Debt Collector and Debts

191.    Defendant NYCHA actions have led to Plaintiff financial difficulties. Debanking, credit card closure, derogatory comments on credit report, reduction of credit scores at credit bureaus, lowering of credit lines, balance transfer offers stop, difficult to apply for new credit as where to get card, missed deadlines to apply for reduced payment plans from credit cards as well as debt collectors.

192.    Halsted Financial Services, May 15 2025, $3874.11

193.    Northstar location services, January 23, 2025, $673.56

194.    United collection bureau, April 9, 2025, $1094.32

195.    D&A services LLC, October 25, 2024; Rubin and Rothman, March 26, 2025, $8670.89

196.  Midland credit management, May 27, 2025 $1166.74

197.  Creditcorp solutions Inc. DNA tasum credit, March 31, 2025 $1016.15

198.  Halsted financial services, April 18, 2025 $4956.32

199.  Halstead financial services May 27, 2025 $1923.62

200.  Portfolio Recovery  Associates, November 21, 2024 $8741.73

201.  Client Services Inc. June 2, 2025 $2849.49

202.  As of June 5 2025. NYCHA Rent arrears of $6 364.54

**Estate**

203.  Plaintiff is a beneficiary to Estate involving Estate Administrator herein Surrogate Court ( File No. 2024 - 477)

204.  Defendant NYCHA nonresponsive to Estate Administrator USPS certified mail (regarding inter alia Mailbox Key, warranty of habitability, broken Apartment 2G door chain lock and security deposit). Violations of Estate rights and Decedent rights.


205.  Defendant NYCHA and NYPD actions (inter alia withholding funds and not securing Decedent assets) have impeded Surrogate Court (File No. 2024 - 477) timelines and beneficiaries funding.


**Community**


206.  As a part of the relief sought, Plaintiff requests the appointment of an independent federal monitor with full authority to oversee and report on NYCHA disciplinary processes, whistleblower protections, tenant and tenant family rights are protected to ensure compliance with law and prevent future abuse.


207.  As a part of the relief sought, Plaintiff requests the appointment of an independent federal monitor with full authority to oversee and report on NYPD disciplinary processes, whistleblower protections, are protected to ensure compliance with law and prevent future abuse for everyone and especially with marginalized communities.


208.  NYCHA and any partners (i.e. Elliot Fulton LLC) must agree to correct rent calculations, provide refunds, and implement new procedures (communicating with Estate Administrators and tenant family) to prevent future abuse for everyone and especially with marginalized communities. Actually, protecting tenant rights, not just writing flyers about it.

**Plaintiff**

209.    Plaintiff seeks award compensatory (employment should have obtained post caregiver work completion), emotional (depression), mental (insomnia), physical personal injury (back pain and suffering that would not have happened IF Plaintiff was spared a home invasion and swatting scheme) and punitive (deterrence punishing intentional malicious reckless actions by Defendant) damages.

210.    Plaintiff is faced with the loss of enjoyment of life. How to fix that.

211.    Award the Plaintiff damages in an amount to be determined at (jury) trial.

212.    Grant such other and further relief as this Court may deem just and proper

**POTENTIAL NEXT STEPS**

1. scheduling / housekeeping
2. settlement conference
3. prehearing conference
4. resolution meeting
5. discovery process
6. interrogatory
7. witness list
8. evidence list
9. deposition

10. HPD warranty of habitability

11. RFM

12. Appeal

13. ALJ impartial hearing

14. New York Supreme Court Article 78

15. Civil Court of the City of New York, County of New York, index no. LT-322317-24/NY next date September 24 2025.

## CITATIONS / REFERENCES

1. Donlon v City of New York et. al. SDNY case no. 25 - cv - 05831

2. Fields v Russ SDNY case no. 19 - cv 11368

3. New York County Supreme Court case no. 4762/89

4. Supreme Court of the United States, 22 - 660, Murray v UBS Securities LLC, et al.

   o unanimous decision authored by Justice Sonia Sotomayor

Regards,

_____    date JULY 31, 2025

Rickford Samaroo, 419 West 17 Street, Apt 2G, New York, NY 10011

Tel: 646-934-9081